IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHARLES STEVENS,

    Petitioner,

v.                                                CASE NO. 5:07-cv-00199-RS -GRJ

WALTER A. MCNEIL,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Bay County conviction of aggravated battery, for which he received an enhanced sentence of life imprisonment with a mandatory 25 years without parole. Respondent has filed a response and appendix with relevant portions of the state-court record, Doc. 13, and Petitioner has filed a reply, Doc. 16. Upon due consideration of the petition, the response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

As set forth in the state-court record, the facts underlying the petition may be summarized as follows. On July 17, 2003, Petitioner was charged by information with one count of first degree attempted murder by shooting the victim in the head.

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

Respondent's Appendix (hereafter "App.") Ex. A. Petitioner had been arrested on June 21, 2003. An amended information was filed on January 20, 2004, charging Petitioner with aggravated battery with a deadly weapon (firearm). App. Ex. C. On that same date, Petitioner's counsel filed a notice of expiration of the 175-day Florida speedy trial time period pursuant to Fla. R. Crim. P. 3.191, and requested that the court set a trial date within the 15-day "recapture" period provided by Florida's speedy-trial law. App. Ex. D; *see* Fla. R. Crim. P. 3.191(p). The trial court held a hearing on January 21, 2004, at which trial was set for February 2, 2004, within the recapture period. App. Ex. E. On January 23, 2004, the State filed a response to the notice of expiration of speedy trial time period, arguing that on November 23, 2003, the defense had waived Petitioner's speedy trial right by accepting a trial date beyond the speedy trial period. App. Ex. F. Petitioner's counsel filed a reply disputing the existence of an agreement to conduct the trial outside the speedy trial window. App. Ex. G. The issue was discussed at a hearing on January 30, 2004, during which defense counsel informed the court that because the State was ready to proceed to trial on February 2, 2004, within the recapture period provided by Rule 3.191(p), the speedy trial issue was moot. App. Ex. H.

Trial commenced on Monday, February 2, 2004, with jury selection, although the trial itself did not begin until the following Thursday, February 5. *See* App. Ex. H.[2] Amended informations were filed on January 30 and February 4, 2004, the last of which charged Petitioner with aggravated battery, during the commission of which Petitioner

---

[2] Pursuant to Fla. R. Crim. P. 3.191(c), the trial is deemed to have commenced when the jury panel is sworn for voir dire.

discharged a firearm.  Specifically, the information alleged that Petitioner intentionally touched or struck the victim causing great bodily harm, permanent disability or disfigurement, and that during the course of that felony Petitioner discharged a firearm and as a result inflicted great bodily harm on the victim. App. Ex. I, J.  Under Florida law, aggravated battery causing great bodily harm is a second-degree felony.  *See* Fla. Stat. § 784.045.  If a firearm is discharged in the course of the aggravated battery, causing death or great bodily harm, the offense must be reclassified pursuant to Fla. Stat. § 775.087(2)(a)(3), which provides for a 25-year mandatory-minimum sentence, and up to life imprisonment.  Petitioner's amended information cited Fla. Stat. § 775.087(3), which provides for enhanced penalties for the discharge of a semi-automatic weapon or machine gun during the course of a felony.  It is undisputed that Petitioner's offense did not involve a semi-automatic weapon or machine gun.  During the trial, the parties presented conflicting evidence as to whether the victim's head injury was caused by a discharge from a firearm or whether the injury was caused by a blow to the victim's head.  *See* App. Ex. K.  The jury returned a verdict finding Petitioner guilty of aggravated battery, with a special finding that Petitioner discharged a firearm and inflicted great bodily harm upon the victim.   App. Ex. L.

Prior to sentencing, the State filed a notice of habitual felony offender status pursuant to Fla. Stat. § 775.084.  App. Ex. M. Petitioner's counsel filed a motion to declare the law unconstitutional on its face and as applied to Petitioner. App. Ex. N. As grounds for the motion, Petitioner's counsel argued that Petitioner should not be subject to sentencing as a habitual offender because the State had not pled Petitioner's prior convictions in the charging information, and thus Petitioner was being subjected to

sentencing beyond the otherwise applicable maximum penalty without such facts having been proven to the jury beyond a reasonable doubt. *Id*. Petitioner's counsel acknowledged that prior convictions need not be pled in the charging document pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), but contended that the prior-conviction exclusion from the *Apprendi* rule, first announced in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), has been criticized by the U.S. Supreme Court and is likely to be overruled. *Id*. The court denied the motion and sentenced Petitioner to life in prison pursuant to Fla. Stat. § 775.087(2)(a)(3), with a mandatory 25 years without parole, and as a habitual offender. App. Ex. O, P at 219.

Petitioner appealed the judgment and sentence to the First District Court of Appeal. Before the initial brief was filed, appellate counsel filed a Fla. R. Crim. P. 3.800(b)(2) motion to correct sentencing error on the basis that Petitioner's life sentence was not authorized. App. Ex. Q. Counsel contended that the trial judge improperly reclassified the aggravated battery conviction pursuant to Fla. Stat. § 775.087(2)(a)(3) because the final amended information alleged that the offense fell under §775.087(3) (pertaining to semi-automatic weapons/machine guns), and that §775.087(2)(a)(3) could not be applied to Petitioner because the jury did not make necessary findings pursuant to *Apprendi*. In the alternative, counsel argued that if the reclassification of the offense to a life felony was proper, then the designation as habitual felony offender was improper since the reclassified offense could not be used to sentence Petitioner as a habitual felony offender. *Id*. The trial court denied the motion, finding that Petitioner was adequately informed of the charges against him because the body of the information correctly tracked the language of

§775.087(2)(a)(3), although it contained an erroneous citation to §775.087(3). The court determined that Petitioner's life sentence was correct under §775.087. App. Ex. S (citing *Janes v. State*, 585 So. 2d 424 (Fla. 1st DCA 1991), and *McDonald v. State*, 714 So.2d 643 (Fla. 3rd DCA 1998)).

On appeal, Petitioner argued that his trial counsel rendered ineffective assistance by failing to move to dismiss the amended informations filed after the speedy trial period had run, and that the trial court erred in giving a jury instruction on "prior threats." App. Ex. T. The First District Court affirmed, per curiam, without opinion. App. Ex. V; *Stevens v. State*, 900 So. 2d 562 (Fla. 1st DCA 2005). Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 raising eighteen grounds for relief. App. Ex. Z. The trial court denied the motion without conducting an evidentiary hearing. App. Ex. CC. The First District Court of Appeals affirmed, per curiam, without opinion. App. Ex. HH; *Stevens v. State*, 952 So. 2d 1157 (Fla. 1st DCA 2007).

Petitioner filed the instant federal habeas petition on August 15, 2007, raising two claims for relief.[3] Doc. 1. Petitioner contends that his trial counsel was ineffective for failing to move to dismiss the amended informations which were filed after the expiration of the 175-day speedy trial period, and that his appellate counsel was ineffective for failing to properly argue on direct appeal that the face of the record reflected such ineffective assistance. Petitioner also asserts that his sentence was improperly reclassified from a second-degree felony to a first-degree felony for

---

[3] Respondent concedes that the Petition is timely.

discharge of a firearm, and that his trial counsel was ineffective for failing to properly raise the claim of sentencing error. Petitioner asserts that had trial counsel properly argued that his sentence was improperly enhanced where use of a firearm was an essential element of the crime charged, he would have been sentenced for a second-degree felony instead of a first-degree felony.

## Section 2254 Standard of Review

Federal habeas corpus relief may be granted only if the petitioner has properly exhausted his federal claims in state court. § 2254(b)(1), (c). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). To exhaust state-court remedies, the federal claim must be fairly presented to the state court, to give the State the opportunity to pass upon and correct alleged violations of federal constitutional rights. *See Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citations omitted); *Duncan v. Henry,* 513 U.S. 364, 365-366 (1995). While it is not necessary that the petitioner cite "book and verse" of the Constitution, the state court must be alerted to the fact that a federal constitutional claim is raised. *Duncan,* 513 U.S. at 365-366 (citations omitted); *see also McNair v. Campbell,* 416 F.3d 1291, 1303 (11th Cir.2005) (holding that a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record") (citations omitted).

The petitioner also "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *Pope v. Rich,* 358 F.3d 852, 854 (11th Cir.2004) (applying this one complete round requirement

to state collateral review process as well as direct appeal). If a claim is not fairly presented through one complete round of state court review and review is no longer available in state court, it is procedurally defaulted and the petitioner must demonstrate cause and prejudice for the default *or* a miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *McCleskey v. Zant,* 499 U.S. 467, 494-95 (1991).

For properly exhausted claims, there are limitations on this court's review of state court findings of fact. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir.2003) (citations omitted) ("The decisions of other federal circuit courts (and our

decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

## **Ineffective Assistance of Counsel**

The basic law governing ineffective assistance of counsel claims was established in *Strickland v. Washington,* 466 U.S. 668, 690(1984). *See Williams,* 529 U.S. at 405-406, *Bell,* 535 U.S. at 694-695. Under the two-part test of *Strickland,* in order to obtain federal habeas relief a petitioner must demonstrate both deficient performance and prejudice to the outcome of his state-court proceeding.  To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that *no competent counsel* would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir.2000). *See also Fugate v. Head,* 261 F.3d 1206, 1217 (11th Cir.2001) (citing *Chandler* ). Where trial counsel's performance was objectively reasonable, the fact that another reasonable lawyer would have pursued a different course is immaterial whether or not trial counsel actually considered that different course of action. *Chandler,* 218 F.3d at 1315, n. 16 (citations omitted). As it is an objective inquiry, it "matters little" if, after the conviction, counsel concedes his performance was deficient. *Id.* (citations omitted).  To demonstrate prejudice under *Strickland,* a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." 466 U.S. at 694.

## Petitioner's Claims

### (1) Ineffective Assistance Regarding Speedy Trial Rights

Petitioner contends that his trial counsel rendered ineffective assistance by failing to move for dismissal of the informations filed after expiration of the speedy trial period, and that his appellate counsel raised the issue improperly on appeal. In his memorandum accompanying the petition, Petitioner argues that had his trial counsel filed such a motion, it would have been granted and Petitioner would have been discharged from prosecution for the crime. He contends that his appellate counsel failed to file a reply brief provided to counsel by Petitioner that Petitioner says would have overcome the State's opposition to this claim on direct appeal, and that appellate counsel failed to properly assert a federal Sixth Amendment speedy-trial claim. Petitioner contends that appellate counsel failed to cite certain cases that would have supported his state-law claim on direct review. Doc. 1.

In response, Respondent focuses exclusively on Petitioner's claim that his appellate counsel rendered ineffective assistance on direct appeal with respect to his speedy-trial rights. *See* Doc. 13. Respondent contends that Petitioner failed to exhaust his state court remedies with regard to the performance of his appellate counsel because Petitioner did not seek relief under Fla. R. App. P. 9.141(c), which authorizes petitions alleging ineffective assistance of appellate counsel in the appellate court to which the appeal was or should have been taken, and which provides that such petitions must be filed within two years of the judgment of conviction. Respondent does not address Petitioner's claim that his trial counsel rendered ineffective assistance with

respect to Petitioner's speedy trial rights. *See id*. In reply, Petitioner contends that Fla. R. App. P. 9.141(c) does not provide a remedy for a claim that appellate counsel insufficiently pursued a claim on direct appeal, only that appellate counsel wholly failed to raise an issue on direct appeal. *See* Doc. 16. Petitioner does not dispute that he failed to pursue such relief.

Respondent is correct that state petitions alleging any claim of ineffective assistance of appellate counsel must be filed in the Florida appellate courts. *See*, *e.g.*, *Jean-Marie v. State*, 27 So. 3rd 709 (Fla. 3rd DCA 2010); *Forisso v. State*, 968 So. 2d 677 (Fla. 4th DCA 2007). Further, a review of Petitioner's Rule 3.850 postconviction motion reflects that he did not attempt to raise this claim in that motion. *See* App. Ex. Z. Accordingly, the Court agrees that this claim is unexhausted and procedurally defaulted as to the performance of Petitioner's appellate counsel. Petitioner has failed to make any argument that he can establish cause and prejudice sufficient to overcome the default.

Moreover, even if Petitioner had exhausted this claim, the Court concludes that Petitioner is not entitled to relief on the merits of his claim that his trial counsel and appellate counsel rendered ineffective assistance with regard to his speedy trial rights. Petitioner raised his claim regarding trial counsel on postconviction review in his Rule 3.850 motion. In rejecting the claim, the state court determined that Petitioner's rights under the Florida speedy trial law were not violated because his trial proceeded in accordance with the "recapture" period of the state law. App. Ex. CC. Applying *Strickland* to Petitioner's ineffective-assistance claim, the court found that counsel did not render ineffective assistance by not moving to dismiss the amended information

because the proceedings occurred within the recapture period. *See id*.

Although an ineffective-assistance-of-counsel claim is a federal constitutional claim which federal courts consider in light of the clearly established rules of *Strickland,* when "the validity of the claim that [counsel] failed to assert is clearly a question of *state* law . . . we must defer to the state's construction of its own law." *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (*superseded on other grounds*); *see also Callahan v. Campbell,* 427 F.3d 897, 932 (11th Cir.2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them[.]" (internal quotation and citation omitted)). In the same vein, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary,* 967 F.2d 530, 535 (11th Cir.1992); *Hunt v. Tucker,* 93 F.3d 735, 737 (11th Cir.1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation).

Thus, the state court's determination that Petitioner's rights under the state speedy trial rule were not violated must be accorded deference. The state court's further conclusion that counsel did not render ineffective assistance by not moving to dismiss the amended information (based on the implicit conclusion that such a motion would clearly have been unsuccessful) was not contrary to, or an unreasonable application of, *Strickland*.

To the extent that Petitioner's pleadings in the state court and here may be

liberally construed as asserting a claim that his counsel failed to protect his federal speedy trial rights under the Sixth Amendment, he has made no showing that he is entitled to federal habeas relief.[4] The test for adjudicating a Sixth Amendment speedy trial claim requires a balancing of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant.[5] When the delay between arrest or indictment and trial is more than one year, there is a presumption of prejudice sufficient to trigger application of the four part test as a whole. *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992).

In this case, the time between Petitioner's June 21, 2003, arrest and the February 2, 2003, trial was less than one year. Therefore, there is no presumed prejudice. Petitioner does not explain exactly how the delay between arrest and trial on the amended information in his case caused any prejudice to his defense, nor can the Court discern any from its review of the record. Petitioner has not shown that his trial or appellate counsel performed deficiently in connection with his federal constitutional right to a speedy trial.

### (2) Ineffective Assistance Regarding Sentencing

Petitioner contends that his trial counsel failed to properly raise a sentencing issue during the penalty phase. Specifically, Petitioner argues that in addition to making the *Apprendi* argument in the Rule 3.800 motion as outlined above, counsel

---

[4] It does not appear that Petitioner raised this claim in his Rule 3.850 motion in the state court. This Court may deny habeas relief notwithstanding the failure to exhaust a claim in the state courts. 28 U.S.C. § 2254(b)(2).

[5] *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972); *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992).

also should have argued that his sentence could not be enhanced for discharge of a firearm under § 775.087(2)(a)(3) because use of a firearm was an essential element of the offense and the enhancement is inapplicable to offenses which have use of a firearm as an essential element. Doc. 1 (citing § 775.087(1)). In response to this argument in Petitioner's Rule 3.850 motion, the State argued that Petitioner was not entitled to relief because, as charged in the information, use of a firearm was not an element of the aggravated battery charge but was charged as a separate sentencing enhancement under § 775.087(2)(a)(3). App. Ex. AA.

It is clear from the record that the trial court determined that Petitioner was subject to the enhanced sentencing penalties pursuant to § 775.087(2)(a)(3). It is also clear that counsel vigorously challenged Petitioner's enhanced sentence in the trial court, although not on the ground advanced by Petitioner currently. *See* App. Ex. Q (Rule 3.800 motion). A review of the record in this case reflects that such a challenge would not have been successful.[6] Petitioner is correct that reclassification of aggravated battery from a second degree felony to a first degree felony "is precluded under the statute if the crime charged requires use of a weapon as one of its essential elements." *Dozier v. State*, 677 So.2d 1352, 1353 (Fla. 2nd DCA 1996). In *Dozier*, the state appellate court vacated an enhanced sentence under § 775.087(2)(a)(3) because the jury instructions in that case "did not permit the jury to decide whether the [defendant] committed aggravated battery based on great bodily injury independently of

---

[6] Although a sentencing claim may ultimately turn on a question of state law, it may properly fall within the scope of federal habeas corpus review because "the eighth amendment bars a prison sentence beyond the legislatively created maximum." *Ralph v. Blackburn*, 590 F.2d 1335, 1337 n. 3 (5th Cir. 1979).

their determination that he used a weapon in the course of committing that offense."
*Dozier*, 677 So. 2d at 1353. In the instant case, the trial court's instructions to the jury were as follows:

> [T]he defendant in this case, has been accused of the crime of aggravated battery. To prove the crime of aggravated battery the state must prove the following two elements beyond a reasonable doubt[.] The first element is a definition of battery. First, [defendant] intentionally touched or struck [the victim] against his will. Second, [defendant], in committing the battery intentionally or knowingly caused great bodily harm to [the victim] or permanent disfigurement to [the victim].
>
> If you find that the defendant committed an aggravated battery you must then, you will next have to decide if the state has proven beyond a reasonable doubt that during the commission of the battery [defendant] actually possessed a firearm or [defendant] discharged a firearm and as a result of the discharge great bodily harm was inflicted upon [the victim].

App. Ex. K at 413. Thus, in contrast with *Dozier*, the trial court's instructions clearly provided that use of a firearm was *not* an essential element of the aggravated battery charge. The court's instructions permitted the jury to find Petitioner guilty of aggravated battery based on independently-established great bodily harm. See Hurry v. State, 978 So.2d 854, 854-55 (Fla. 1st DCA 2008), *rev. granted* 12 So.3rd 752 (Fla. 2009), and *rev. denied* 23 So.3d 110 (Fla. 2009)(affirming reclassification of aggravated battery to first degree felony where it was clear that aggravated battery was established by great bodily harm, and use of deadly weapon was not essential element of aggravated battery). The jury's verdict form likewise allowed the jury to find that Petitioner was guilty of aggravated battery, independent of the jury's finding that he discharged or

possessed a firearm, and consistent with the conflicting testimony as to the cause of the victim's injury. *Id*. Ex. L. Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

Accordingly, for the foregoing reasons it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS** this 20th day of September 2010.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge